## TRAINOR CO. v. ÆTNA CASUALTY & SURETY CO.

### No. 4568.

Circuit Court of Appeals, Third Circuit.

Dec. 21, 1932.

David L. Ullman, of Philadelphia, Pa., for appellant.

Thomas F. Mount and Joseph W. Henderson, both of Philadelphia, Pa. (Rawle & Henderson, of Philadelphia, Pa., of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

BUFFINGTON, Circuit Judge.

In the court below the Trainor Company (hereafter called Trainor) brought suit against the Ætna Casualty & Surety Company (hereafter called Ætna) upon a bond given to Trainor and others by Ætna and others, which bond Trainor claimed, so far as it concerned it, was breached. Jury was waived. The court made findings of fact, among which was that the bond had been breached and Trainor was entitled to damages, but it further found such damage was nominal. It therefore entered judgment in favor of Trainor for $5. Thereupon Trainor took this appeal.

As all aspects of this somewhat complicated case are recited and can be seen in the opinion of the trial judge at (D. C.) 49 F. (2d) 769, 771, we refrain from needless restatement and detail discussion, for the facts of the case here pertinent were established by the findings of the judge sitting as a jury, and are not reviewable, and the only question now involved is whether, on the facts so found, the court committed error in awarding Trainor mere nominal damages.

By the recitals of the bond Trainor "is to have the equity in the said Fifty-two mortgages subject to and above" certain other claims, etc. And the condition of the bond was: "That, if within ten months from the date hereof each of the lots or premises described in each of the said Fifty-two First Mortgages shall be fully improved and completed with a building, together with the other improvements (such as paved streets, sidewalks, driveways, gas, water, sewerage, etc.), in keeping with and as shown by the aforesaid Plans, Specifications and Conditions, Building Plats and Surveys * * * Then, in the event that all of the above and below mentioned conditions are fully performed, this Bond shall be void, otherwise, it shall remain in full force and effect in law."

Being dated October 13, 1927, Ætna's obligation called for August 13, 1928, as the date for complying therewith. The then status was found by the court as follows: "On August 13, 1928, the date for completion fixed by the bond, 24 houses had been fully completed. The remaining 28 were not far from completion, but sufficient work remained to be done upon them to require a finding (and I so find) that they had not been completed in accordance with the plans and specifications either fully or substantially. * * * The value of the 28 uncompleted houses, as of August 13, 1928, was $6,700 each. This amount is in excess of the sum of the amount of the plaintiff's mortgage on each house and all prior liens. * * * During 1928, 1929, and 1930 the value of real estate generally and in the locality in which this operation was, declined steadily. * * * On January 25, 1930, The Sun Mortgage Company foreclosed its first mortgages buying in all the properties for the sum of $50 and thus wiping out the * * * equity of the Trainor Company therein."

Upon these facts the trial court held: "The measure of damages in this case is so much of the difference between the value of the property as of August 13, 1928, with the houses uncompleted, and the value it would have had on that date had the houses been completed as would have been necessary to pay the plaintiff's mortgage debt as well as all prior liens. Since the value of the property as of August 13, 1928, was more than the sum of the plaintiff's mortgage and prior liens, the plaintiff is not entitled to any substantial damages." Was it in error in so holding?

The trial judge, after stating the law as to the rights of a landowner against a builder where the latter fails to complete, and calling to attention that the present case is not one of an owner but of a mortgagee, says: "A mortgagee of land upon which buildings are to be erected is, however, not in the same position as the owner. Except as it affects the security for his loan he has no genuine interest in the completion of the work. Obviously, the contention of the plaintiff in this

case that the mortgagee like the owner is entitled to the difference in the value of the completed and the uncompleted job, regardless of the value of the land or the amount of the mortgage, is unsound. If that were so, the holder of a mortgage secured ten times over by the value of the land alone, and having no other interest, could recover from a surety large damages for the breach of a contract to build an expensive structure upon it. The fundamental principles and policy of the law above stated forbid such result. * * * The fact in the instant case that nearly a year and a half after the breach the holder of the first mortgages foreclosed and wiped out the plaintiff's security does not affect the situation. * * * Moreover, any number of things totally unconnected with the building operation or with the failure to complete the houses and not reasonably to be foreseen at the time of the giving of the bond might have intervened to depress the value of the property by the time the foreclosure took place. If the value of the property had suddenly increased after the breach, no one would suggest that such fact would affect the plaintiff's right to damages."

The cases bearing on the question here involved have in the main been so fairly and fully discussed in the trial judge's opinion as to necessitate no further analysis. We have not overlooked the case of Purdy v. Massey, 306 Pa. 288, 159 A. 545, subsequent to the case in hand, and where there will be found a full discussion of the opposing views in the majority and dissenting opinions.

It is urged that the law of Purdy v. Massey is local to the commonwealth of Pennsylvania where the contract in suit was intended to be performed, and that, being local law, federal courts are bound to follow it, relying, evidently, upon Lubriko Co. v. Wyman (C. C. A.) 290 F. 12, 17. The expression in that case was but a compressed statement of the law more fully stated by this court in Snare & Triest Co. v. Friedman (C. C. A.) 169 F. 1, 10, 11, 12, 40 L. R. A. (N. S.) 367, and expressly based on Swift v. Tyson, 16 Pet. 1, 8, 10 L. Ed. 865.

We do not regard the decision in Purdy v. Massey as creating a new local law of Pennsylvania, but that, at most, it declared the common law of that state (as those terms are used in the two decisions last cited) with respect, not to property, but to the subject of suretyship, which from its very nature is general law, running, like commercial law, broadly through all the states. In such case, "where the common law of the state is de-

rived from the principles of general jurisprudence common to all the states," a federal court may (as we have done) exercise an independent judgment as to what is the law without respect to the decision of the state court as binding authority.

We are of opinion the court below committed no error in holding that on August 13, 1928, Trainor's mortgage was protected, and therefore it committed no error in restricting the judgment to nominal damages.